UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-4244-BSS

UNITED STATES OF AMERICA,

vs.

LOWEN ESPINEUVA,

Defendant.
_____/

## DETENTION ORDER

Pursuant to Title 18 U.S.C. § 3142(f), on October 30, 2000, a hearing was held to determine whether the defendant, **Lowen Espineuva**, should be detained prior to trial. Having considered the factors enumerated in 18 U.S.C. § 3142(g), this Court finds that no condition or combination of conditions of release will reasonably ensure either the appearance of this defendant as required or the safety of any other person and the community. Therefore, it is hereby ordered that the defendant, **Lowen Espineuva**, be detained prior to trial and until the conclusion thereof.

In accordance with the provisions of 18 U.S.C. § 3142(i), the Court hereby makes the following findings of fact and statement of reasons for the detention:

1. The defendant is charged with obstructing, delaying and affecting commerce by violence and conspiracy to do the same, in violation of 18 U.S.C. §§ 371 and 1951.



Therefore, the defendant is charged with crimes of violence. 18 U.S.C. § 3142(g)(1).

2.     The Court received credible evidence that the defendant committed the offenses with which he has been charged.  On or about October 20, 2000, at approximately 6:40 a.m., a Brinks van made a scheduled drop-off of deposits at CitiBank, 2789 University Drive, Coral Springs, Florida. Brinks is a company engaged in interstate commerce by shipping and transporting money throughout the United States. The funds being transported belonged to CitiBank and were insured by the Federal Deposit Insurance Corporation.

In the course of their delivery, two Brinks guards approached the ATM machine with money from their van. They were ambushed from behind by at least two armed men who fired and struck both guards. One of the guards returned fire as the assailants fled in a red vehicle. A citizen heard the shots being fired and observed a red Honda Civic with dark tinted windows fleeing the scene at a high rate of speed.

Approximately thirty minutes later, a red Honda Civic was located a few blocks east of the bank. The vehicle's ignition was on, the car was running, the right rear passenger window was down, and the right front passenger door was ajar. Police recovered from the vehicle a .9mm caliber semi-automatic pistol, a shotgun, and 3 spent 12-gauge shotgun shell casings. Police located an entry mark near the passenger rear door consistent with a bullet entry. And they located blood splatters on the front windshield, both front seats, the steering wheel cover, the driver's door handle, and the carpet on the driver and passenger sides. In addition, police recovered latex gloves in and around the vehicle, and they found a one inch lock of coarse dark black hair on the driver's side dashboard area; the lock of hair was braided into a dred lock style with skin attached to it and a red stain

that appeared to be blood. Investigation revealed that the red Honda Civic had been reported stolen in Coral Springs approximately eight days earlier.

At 7:55 a.m., employees of Westside Regional Hospital in Plantation, Florida notified police that a subject, later identified as Jermaine Williams, had been dropped off in a black Honda Civic. Williams told hospital staff and police that he had been shot by an unknown person earlier that morning as he was urinating on the side of the Sawgrass Expressway. Examination revealed what Williams had received a grazing wound to the right side of his head consistent with a gunshot wound. After he received treatment, Williams accompanied law enforcement personnel back to the Coral Springs Police Department for further questioning. They observed that Williams' hair appeared to be "dred" in style and was consistent in color, texture, length, and style to the hair sample recovered from the red Honda Civic.

Investigation determined that Williams had been arrested by the Coral Springs Police Department on August 28, 2000, for aggravated battery with a firearm. A search of Williams' vehicle incident to that arrest revealed two bulletproof vests, handcuffs, and two canisters of chemical mace. Williams was accompanied in the vehicle by **Lowen Espineuva**, who resided in Coral Springs.

Coral Springs police and FBI agents responded to **Espineuva's** address and initiated a surveillance. They observed a black Honda Civic and a silver Integra in the parking lot in front of the residence. Police had previously learned that Williams drove a silver Integra. Soon after the surveillance began, an individual later identified as **Lowen Espineuva** emerged from behind the residence; he was immediately detained.

The owner of the black Honda Civic was also contacted and identified as Dana Sampson. Sampson stated that she had driven Williams to the hospital earlier that morning. According to Sampson, **Espineuva** had awakened her, and Williams had asked her to drive him to a hospital either in Boca Raton or in Plantation, but not in Coral Springs. Sampson reported that **Espineuva** did not accompany Williams into the hospital; he instead remained in her vehicle as Williams entered the hospital. Sampson also consented to a search of her apartment. Agents located therein a man's shirt and a latex glove in a trash can; outside her residence, they located another latex glove in a trash can. And they found a red substance, which appeared to be blood, on the front passenger seat of Sampson's vehicle.

**Espineuva** was transported to the Coral Spring Police Department and interviewed by law enforcement officers. After being advised of and waiving his Miranda rights, **Espineuva** told police that he had accompanied Williams to the hospital with Sampson and that he had cleaned the blood off Williams' silver Integra. **Espineuva** further admitted to stealing the red Honda Civic with Williams about a week earlier. Williams had reportedly told him that he wanted to get some money. According to **Espineuva**, Williams came to his home that morning (October 20) at approximately 6:00 a.m. and tried to get him to participate in a robbery. **Espineuva** claims that he (**Espineuva**) went back to sleep. **Espineuva** stated that Williams then returned, bleeding, after the robbery and said, "I pulled, and I got shot."

Police recovered a latent fingerprint from a latex glove found on the ground outside the red Honda Civic allegedly used in this offense. Laboratory analysis matched the

4

fingerprint on the glove with the known fingerprints of **Lowen Espineuva**. Investigation also revealed that the firearms recovered from the red Honda Civic had been reported stolen.

After searching Williams' silver Integra, police recovered a piece a paper bearing a rough sketch of the banking facility at which the robbery occurred; it also listed times of day that were consistent with the Brinks schedule.

Finally, the Government proffered that Coral Springs Police had encountered Jermaine Williams directly behind the CitiBank approximately two weeks prior to the robbery; the encounter occurred at or about the time of day of the Brinks delivery. The Government submits that Williams had been casing the premises. 18 U.S.C. § 3142(g)(2).

3.  The pertinent history and characteristics of the defendant are significant to this Court's assessment of his candidacy for bond. **Lowen Espineuva** is a United States citizen, having been born in Honolulu, Hawaii. He has been residing in the community for the past eleven years. For the past year, he has lived with his father and only brother in Coral Springs; his mother still resides in Hawaii. The defendant is single and has no children.

**Espineuva** reports that he has been unemployed for the past four months. Previously, he worked in a security camera business but quit when he failed to receive a raise. Accordingly, he reports no assets of significant value.

The defendant informed Pretrial Services that he was arrested two months ago for loitering and prowling.

Given the significant period of incarceration that the defendant would fact upon

conviction, coupled with the marginal nature of his ties to this District, the undersigned does not believe that he would be likely to appear if released on bond prior to trial. 18 U.S.C. § 3142(g)(3)(A) and (B)

4. The Government proffered evidence showing that the defendant was involved in a well-planned ambush and shooting of two Brinks guards. Further, this defendant was stopped with co-defendant Jermaine Williams only two months earlier in a vehicle carrying two bulletproof vests, handcuffs, and two canisters of chemical mace. Accordingly, the evidence strongly suggests that **Lowen Espineuva** constitutes a danger to the community. 18 U.S.C. § 3142 (g)(4).

5. The Court specifically finds that there is no condition or combination of conditions of release that reasonably will ensure either the defendant's appearance as required or the safety of any other person and the community. 18 U.S.C. § 3142(e).

Based upon the above findings of fact, which were supported by clear and convincing evidence, the Court has concluded that **Lowen Espineuva** presents a risk of flight if released on bond prior to trial and a danger to the community. The Court hereby directs:

1. That the defendant be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practical, from persons awaiting or serving sentences or being held in custody pending appeal;

2. That the defendant be afforded reasonable opportunity for private consultation with counsel; and

3. That, on order of a court of the United States or on request of an attorney for

6

the Government, the person in charge of the corrections facility in which the defendant is confined deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

DONE AND ORDERED at Fort Lauderdale, Florida this 31st day of October 2000.

_____
BARRY S. SELTZER
United States Magistrate Judge

Copies to:

Barry M. Wax, Esquire
201 South Biscayne, Suite 1
Miami, Florida 33131-4332
Attorney for Defendant

Thomas Lanigan, Esquire
Assistant United States Attorney

United States Marshal

United States Pretrial Services